**Hearing Date: TBD**

Robert S. Fischler
(robert.fischler@ropesgray.com)
Stephen C. Moeller-Sally
(ssally@ropesgray.com)
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

Paul M. O'Connor III
(poconnor@kasowitz.com)
Andrew K. Glenn
(aglenn@kasowitz.com)
KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

*Attorneys for the Apax Defendants*          *Attorneys for the TPG Defendants*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re:* | Chapter 15 |
| HELLAS TELECOMMUNICATIONS (LUXEMBOURG) II SCA | Case No. 12-10631 (MG) |
| Debtor in a Foreign Proceeding | |
| ANDREW LAWRENCE HOSKING and SIMON JAMES BONNEY, in their capacity as joint compulsory liquidators and duly authorized foreign representatives of HELLAS TELECOMMUNICATIONS (LUXEMBOURG) II S.C.A., <br><br>                                  Plaintiffs, <br><br>             -against- <br><br> TPG CAPITAL MANAGEMENT, L.P., *et al.*, <br><br>                                  Defendants. | Adversary Proceeding No. 14-01848 (MG) |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION
BY CERTAIN APAX AND TPG DEFENDANTS TO DISMISS
<u>THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION</u>**

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................................ ii

TABLE OF DECLARATIONS AND EXHIBITS ....................................................................... iv

ARGUMENT ............................................................................................................................................. 1

    I.    THERE IS NO SPECIFIC JURISDICTION OVER THE NON-U.S. DEFENDANTS ................................................................................................................ 1

        A.    Plaintiffs Improperly Lump the Moving Defendants Together ............................. 1

        B.    DB's Contacts Do Not Support Jurisdiction Over Any Non-U.S. Defendant ................................................................................................................ 1

            1.    The Claims are Not Sufficiently Related to DB's Alleged Contacts............ 2

            2.    DB Was Not Any Non-U.S. Defendant's Agent ......................................... 4

        C.    Non-U.S. Defendant Transfers to the U.S are Irrelevant ....................................... 6

        D.    The Exercise of Specific Jurisdiction Would Be Unreasonable ........................... 7

    II.    GENERAL JURISDICTION DOES NOT EXIST OVER THE U.S. DEFENDANTS ................................................................................................................ 7

CONCLUSION ........................................................................................................................................ 10

## TABLE OF AUTHORITIES

**Cases**                                                                                                                   **Page(s)**

*Absolute Activist Master Value Fund, Ltd. v. Ficeto*,
    2013 WL 1286170 (S.D.N.Y. March 28, 2013) ....................................................................3

*Bastian v. Fast EFNDS LLC*,
    2014 WL 64459 (Bankr. E.D. Wis. Feb. 18, 2014) ...............................................................9

*Best Odds Corp. v. iBus Media Ltd.*,
    2104 WL 2527145 (D. Nev. June 4, 2014)..............................................................................9

*Bigio v. The Coca-Cola Co.*,
    675 F.3d 163 (2d Cir. 2012).....................................................................................................5

*British Am. Ins. Co. Ltd. v. Fullerton (In re British Am. Ins. Co. Ltd.)*,
    2013 WL 1881712 (Bankr. S.D. Fla. Apr. 30, 2013) .........................................................9, 10

*Chew v. Dieterich*,
    143 F.3d 24 (2d Cir.1998).......................................................................................................6

*Cutco Indus., Inc. v. Naughton*,
    806 F.2d 361 (2d Cir. 1986).....................................................................................................5

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014)....................................................................................................8, 9, 10

*Dardona Ltd. v. A.O. Yuganskneftegaz*,
    317 F.3d 202 (2d Cir. 2003).................................................................................................8, 9

*Gushi Bros. Co. v. Bank of Guam*,
    28 F.3d 1535 (9th Cir. 1994) ...................................................................................................3

*Jackson Nat. Life Ins. Co. v. Merrill Lynch & Co.*,
    32 F.3d 697 (2d Cir. 1994)...................................................................................................4, 5

*Jennings v. Bonus Bldg. Care, Inc.*,
    2014 WL 1806776 (W.D. Mo. May 7, 2014) .........................................................................9

*Maxwell Commc'n Corp. v. Societe General (In re Maxwell Comm'n Corp. plc)*,
    186 B.R. 807 (S.D.N.Y. 1995), *aff'd*, 93 F.3d 1036 (2d Cir 1996) ......................................2, 3

*O'Connell v. Arthur Anderson LLP (In re Alphastar Ins. Grp. Ltd.)*,
    383 B.R. 231 (Bankr. S.D.N.Y. 2008) .....................................................................................1

*Picard v. Maxam Absolute Return Fund, L.P.*,
    460 B.R. 106 (Bankr. S.D.N.Y. 2011) ........................................................................... 6, 7

*Porina v. Marward Shipping Co.*,
    521 F.3d 122 (2d Cir. 2008) ............................................................................................ 9

*Refco Group Limited v. Cantor Fitzgerald, L.P.*,
    2014 WL 2610608 (S.D.N.Y. June 10, 2014) ................................................................. 9

*Rockwell Automation, Inc. v. Beckhoff Automation, LLC*,
    2014 WL 2459604 (D. Nev. May 30, 2014) ................................................................... 9

*Societe Generale v. Florida Health Scs. Ctr.*,
    2003 WL 22852656 (S.D.N.Y. Dec. 1, 2003) ................................................................. 5

*Sonera Holding B.V. v. Cukorova Holding A.S.*,
    2014 WL 1645255 (2d Cir. Apr. 25, 2014) ......................................................... 8, 9, 10

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) ................................................................................................ 2, 7

*West v. Posey (In re Hot-Hed, Inc.)*,
    2014 WL 2919340 (Bankr. S.D. Tex. June 26, 2014) ..................................................... 9

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. XIV ........................................................................................................ 8

**RULES**

Fed. R. Bktcy. P. 7004 ................................................................................................ 8, 9, 10

Fed. R. Civ. P. 4(k) ................................................................................................................ 9

Fed. R. Civ. P. 12(b)(2) ......................................................................................................... 2

## TABLE OF DECLARATIONS AND EXHIBITS

**Page(s)**

Declaration of Marc D. Ashley

    Exhibit 13 ................................................................................................................... 3, 4

    Exhibit 34 ....................................................................................................................... 5

    Exhibit 37 ................................................................................................................ 3, 4, 6

    Exhibit 38 ................................................................................................................... 3, 6

Reply Declaration of Evan P. Lestelle

    Exhibit A .......................................................................................................................... 4

    Exhibit B .......................................................................................................................... 4

The Moving Defendants submit this reply memorandum in further support of their motion to dismiss for lack of personal jurisdiction.[1] The Apax Moving Defendants and TPG London are all located overseas and are collectively referred to herein as the "Non-U.S. Defendants." The remaining TPG Moving Defendants are all located outside of New York and are collectively referred to herein as the "U.S. Defendants." As discussed below, plaintiffs have not met their burden of making a factually supported *prima facie* showing of personal jurisdiction as to any of the Moving Defendants.

## ARGUMENT

### I. THERE IS NO SPECIFIC JURISDICTION OVER THE NON-U.S. DEFENDANTS

#### A. Plaintiffs Improperly Lump the Moving Defendants Together

Contrary to the undisputed requirement of controlling law that each defendant's "minimum contacts" be assessed individually, *see* Moving Br. at 5 (citing cases), throughout their brief plaintiffs lump all of the Moving Defendants together and refer to them collectively as "Apax" or "TPG."[2] For this reason alone, plaintiffs have not met their burden as to any of the Moving Defendants.[3]

#### B. DB's Contacts Do Not Support Jurisdiction Over Any Non-U.S. Defendant

Plaintiffs assert only specific jurisdiction as to the Non-U.S. Defendants, even though they do not purport to show that any Non-U.S. Defendant had direct contacts with the U.S.

---

[1] The Moving Defendants are identified in the initial memorandum of law in support of this motion (the "Moving Brief" or "Moving Br.") [Docket No. 37] at 1 n.1. Capitalized terms not defined herein shall have the meaning ascribed to them in the Moving Brief. The Moving Defendants also submit herewith the Reply Declaration of Evan P. Lestelle ("Lestelle Decl.").

[2] Plaintiffs present no argument to disregard the separate legal identities of the Apax Moving Defendants under New York law and have failed to make any showing as to applicable foreign law. *See O'Connell v. Arthur Anderson LLP (In re Alphastar Ins. Grp. Ltd.)*, 383 B.R. 231, 279 (Bankr. S.D.N.Y. 2008) (veil piercing is governed by the law of the state of incorporation).

[3] Plaintiffs do not assert specific jurisdiction over the U.S. Defendants, and rest solely on deficient allegations of general jurisdiction based on nationwide service of process. To the extent plaintiffs attempt to assert specific jurisdiction over the U.S. Defendants, they fail for the same reasons set forth as to the Non-U.S. Defendants.

Instead, plaintiffs argue that Deutsche Bank AG ("DB") acted as the Non-U.S. Defendants' agent in connection with the sale of Sub Notes in the U.S., and therefore that DB's alleged contacts concerning those sales may be imputed to each Non-U.S. Defendant. This theory fails on several grounds, including, as a threshold matter, the absence of specific jurisdiction over DB for the reasons set forth in its Rule 12(b)(2) motion. As a result, plaintiffs' agency theory of specific jurisdiction fails as to the Non-U.S. Defendants.

### 1. The Claims are Not Sufficiently Related to DB's Alleged Contacts

Even if specific jurisdiction over DB were adequately shown, plaintiffs' agency theory would fail. To establish specific jurisdiction, plaintiffs must show, among other things, that a defendant had minimum contacts with the forum *and* that plaintiffs' claims arise out of or relate to those contacts. *See* Moving Br. at 6. The forum contacts must have a "substantial connection" to the claims. *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). The requisite connection is lacking here, where plaintiffs' claims involve alleged fraudulent transfers that are separate from the U.S. Sub Notes sales.

Plaintiffs' claims posit an initial fraudulent transfer between Hellas II and Hellas I, and "subsequent transfers" to the Moving Defendants. Both the initial "Hellas to Hellas" transfer and all subsequent transfers to Non-U.S. Defendants occurred entirely overseas. It is undisputed that potential "transferee" liability of the Non-U.S. Defendants does not depend on how or to whom DB marketed Sub Notes in the U.S. Put simply, this case is about the transfers, not the Sub Notes sales. *See Maxwell Commc'n Corp. v. Societe Generale (In re Maxwell Commc'n Corp. plc)*, 93 F.3d 1036, 1051 (2d Cir. 1996) ("scrutiny of the transfer is at the heart" of an avoidance action).[4]

---

[4] As plaintiffs' agency theory implicitly concedes, the transfers to the Non-U.S. Defendants cannot support specific jurisdiction because they occurred **entirely overseas**. A chart depicting all of the transfers to the Non-U.S. Defendants can be found at Point IV.B of the accompanying Memorandum of Law in Further Support of Motion by TPG Defendants and Apax Defendants to Dismiss the Complaint. As it shows, each transfer to a Non-U.S.

2

At most, DB's alleged U.S. sales activities had an attenuated connection to the overseas transfers to Non-U.S. Defendants (none of which received proceeds traceable to the U.S., as discussed below), and therefore cannot support specific jurisdiction. *See Absolute Activist Master Value Fund, Ltd. v. Ficeto*, 2013 WL 1286170, at *11-12 (S.D.N.Y. March 28, 2013) (U.S. trips to raise money that allegedly "fueled the fraud" were too attenuated); *see also Gushi Bros. Co. v. Bank of Guam,* 28 F.3d 1535, 1538 (9th Cir. 1994) (U.S. conduct that "is merely preparatory or incidental to the proscribed conduct does not confer . . . jurisdiction."); *In re Maxwell Commc'n Corp. plc*, 186 B.R. 807, 817 (S.D.N.Y. 1995), *aff'd*, 93 F.3d 1036 (2d Cir 1996) (in avoidance action, U.S. asset sales that generated funds transferred overseas were merely "preparatory").

The attenuated nature of the relationship between U.S. Sub Notes sales and the foreign transfers is further evidenced by two key facts ignored by plaintiffs. First, the U.S. tranche represented only ***18%*** of the Sub Notes offering, which primarily was marketed in Europe.[5] Thus, DB's alleged U.S. sales had *no* relationship to ***82%*** of the Sub Notes proceeds. Second, as discussed below, plaintiffs have made ***no showing*** -- because they cannot -- that any proceeds raised in the U.S. were transferred to or otherwise touched any Non-U.S. Defendant (or, for that matter, any Moving Defendant).

As the Offering Memorandum shows, Hellas II's €1.17 billion Sub Notes offering was only one part of a larger (€1.57 billion) refinancing that included other offerings as well. Ashley Decl. Ex. 13 ("OM") at 59. Critically, Hellas II made the initial transfer of €1.57 billion (minus fees and expenses) to Hellas I, *id*. and n.4, from a JPMorgan Chase account in London in which

---

Defendant ***originated and was received outside the U.S.*** *See* Declaration of Marc D. Ashley in Opposition to Defendants' Motions to Dismiss the Complaint for Lack of Personal Jurisdiction [Docket No. 81] ("Ashley Decl.") Ex. 37, nos. 2-6, 63, 99; Ex. 38.

[5] Ashley Decl. Ex.13 (OM) at 60 n.4. As explained there, after conversion to euros, the U.S. offering was only €210.4 million out of a total offering of €1.17 billion, or slightly less than 18%.

3

the proceeds of the various offerings and cash from the Hellas operating company **were co-mingled** (or "pooled," OM at 9).[6] After the initial transfer, Hellas I paid €544.7 million to Hellas Finance and €973.7 million (the proceeds plaintiffs seek to recover here) to Hellas. *Id*. Hellas then paid €973.7 million to redeem CPECs from the Sponsors. *See* Compl. ¶ 118; OM at 59 n.4. The Sponsors then transferred proceeds to certain defendants, including one Non-U.S. Defendant that received approximately €400 million. Ashley Decl. Ex. 37, no. 3. As the foregoing makes clear, there can be no argument (and plaintiff does not present one) that any portion of that €400 million is traceable to Sub Notes proceeds raised in the U.S.

In sum, there is no substantial connection between the plaintiffs' claims against the Non-U.S. Defendants and DB's alleged U.S. sales of Sub Notes. Therefore, plaintiffs have not shown specific jurisdiction as to any Non-U.S. Defendant.

### 2. DB Was Not Any Non-U.S. Defendant's Agent

Plaintiffs' agency theory also fails because they have failed to show that DB sold Sub Notes in the U.S. as the agent of any Non-U.S. Defendant. Indeed, in the Purchase Agreement between Hellas II and the Initial Purchasers (*i.e.*, the underwriters, including DB), Hellas II acknowledged that "the Initial Purchasers have acted at arm's length, *are not agents of* . . . the Issuer *or any other person*." Lestelle Decl. Ex. B § 12 (p. 22) (emphasis added). This is entirely consistent with the substantive terms of the contract, which memorializes a "firm commitment underwriting" in which the Initial Purchasers purchased the Sub Notes from Hellas II, *id*. § 1 (p. 2), and thus bore "the risk if the offering [was] undersubscribed." *Jackson Nat. Life Ins. Co. v.*

---

[6] As shown by a "Funds Flow Memorandum" produced by plaintiffs in discovery, €1.17 billion in total Sub Notes proceeds (including €210.4 million from the U.S. tranche) was transferred from two DB accounts (one in London and one in Germany) to the Hellas II account at JPMorgan Chase Bank, London, and approximately €400 million from other sources was contemporaneously transferred to the same Hellas II account. Lestelle Decl. Ex. A. at 4-5 (Transf. 1g, h, k); *see also id.* at 6, 9 (Transf. 2a, 3b) (showing transfers from Hellas II to Hellas I); OM at 9 (stating that the Sub Notes proceeds would be "pooled" with the proceeds of a contemporaneous PIK notes offering).

4

*Merrill Lynch & Co.*, 32 F.3d 697, 701 (2d Cir. 1994). In short, DB was acting for its *own* account in selling Sub Notes in the U.S.

Even if DB could somehow be characterized as *Hellas II's* agent, the emails cited by plaintiffs do not show that it was any *Non-U.S. Defendant's* agent. First, despite plaintiffs' generalized references to "Apax" and "TPG," the only Non-U.S. Defendants that authored the emails were Apax LLP and TPG London. Second, the emails merely evidence discussions with DB regarding aspects of the Sub Notes offering, not that any Non-U.S. Defendant *controlled* DB's activities in the U.S. or that DB was acting for any Non-U.S. Defendant's benefit. *See Cutco Indus., Inc. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986) (describing control for agency jurisdiction as "joint control of a business enterprise – similar to that existing in a partnership or joint venture"); *Societe Generale v. Florida Health Scs. Ctr.*, 2003 WL 22852656, at *6 (S.D.N.Y. Dec. 1, 2003).[7] Although plaintiffs assert that the Non-U.S. Defendants "managed [DB's] marketing of Sub Notes," Pl. Br. at 19, the single email they cite, from non-defendant Apax Partners, Ltd., merely discusses the rationale for the offering and does not show that any Non-U.S. Defendant "managed," let alone controlled, DB's U.S. activities.

Plaintiffs similarly mischaracterize other emails. To take but one example, they assert that the U.S. tranche of Sub Notes was "authorized" by "TPG Europe and Apax." Pl. Br. at 19. But the email they cite merely reports that DB launched the U.S. tranche, while other documents make clear that the offering was not authorized by any Non-U.S. Defendant, but *by Hellas* in its capacity as Sole Manager and General Partner of Hellas II. Ashley Decl. Ex. 34 at 119-23.

---

[7] *See generally Bigio v. The Coca-Cola Co.,* 675 F.3d 163, 175 (2d Cir. 2012) (under New York law, an agent is "subject to [the principal's] control.")

### C.    Non-U.S. Defendant Transfers to the U.S are Irrelevant

Plaintiffs argue that specific jurisdiction may rest on transfers by Non-U.S. Defendants to the U.S. *after* their receipt of the transfers at issue here. This argument is legally flawed and rife with material factual misstatements. For example, plaintiffs again fail to distinguish among the Moving Defendants and thus give the misleading impression that *all* Non-U.S. Defendants transferred proceeds to the U.S. In fact, only two Apax Moving Defendants made transfers to the U.S., Ashley Decl. Ex. 37 nos. 7-62, 64, and TPG London made no transfer to the U.S., *id.* Ex. 38. Moreover, it is *not* true that the Non-U.S. Defendants transferred "nearly two-thirds (or €516 million)" of redemption proceeds to the U.S. Pl. Br. at 19. The actual amount was €115 million, less than **12%** of the total proceeds.[8] Ashley Decl. Ex. 37, nos. 7-62, 64. Similarly, plaintiffs' assertion that the Non-U.S. Defendants made "[m]ore than 200 bank transfers totaling $296 million and €115 million" to the U.S., is false. Pl. Br. at 19. In fact, two Apax Moving Defendants made a total of 56 such transfers totaling €115 million. Ashley Decl. Ex. 37, nos. 7-62, 64.

Beyond its reliance on materially inaccurate facts, plaintiffs' argument fails because the U.S. transfers described above are not substantially connected to plaintiffs' claims. As discussed, plaintiffs seek to impose *transferee*, not *transferor*, liability on the Non-U.S. Defendants based solely on transfers made *to* them, not *by* them.[9] Plaintiffs do not even attempt to explain how

---

[8] Plaintiffs' €516 million figure includes **purely domestic transfers** by certain TPG Moving Defendants (not TPG London) based in the U.S. (but not in New York). Ashley Decl. Ex. 38. Those "U.S. to U.S." transfers did not involve any Non-U.S. Defendant and are utterly irrelevant to the issue of specific jurisdiction over the Non-U.S. Defendants.

[9] Plaintiffs' reliance on *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106 (Bankr. S.D.N.Y. 2011) is misplaced, as that decision actually undercuts their position. There, the claims-related U.S. contacts were extensive and included a contract entered into by the defendant that provided for the application of New York law. In light of those extensive contacts, the court applied a "but for" relatedness test, whereas a "proximate cause" test should be applied here given the limited (or non-existent) U.S. contacts. *See Chew v. Dieterich*, 143 F.3d 24, 29 (2d Cir.1998). Even under a "but for" test, relatedness is not satisfied here because it is not the case, as it was in *Maxam*, that

6

transfers made to the U.S. *after* the conduct from which the claims herein arise (*i.e.*, the *receipt* of transfers) could create a substantial connection between the U.S. and the claims against the Non-U.S. Defendants.

### D.  The Exercise of Specific Jurisdiction Would Be Unreasonable

The exercise of jurisdiction over the Non-U.S. Defendants would be unreasonable because they are domiciled overseas, engaged in no relevant U.S. conduct, and had no reason to expect that they would be haled into a U.S. court to defend claims seeking recovery of *purely foreign subsequent transfers* that followed a purely foreign initial transfer. Plaintiffs -- themselves foreign liquidators -- have brought litigation in Luxembourg related to the same refinancing at issue here and easily could have brought this action in Luxembourg as well. That plaintiffs prefer this forum is beside the point: "The 'minimum contacts' inquiry principally protects the liberty of the nonresident defendant, not the interests of the plaintiff." *Walden*, 134 S. Ct. at 1125, n.9 (citation omitted).

## II.  GENERAL JURISDICTION DOES NOT EXIST OVER THE U.S. DEFENDANTS

As for general jurisdiction over the U.S. Defendants -- all of which are, as the complaint alleges, located outside New York -- plaintiffs' sole theory is general jurisdiction. This theory is not based on any contacts with New York, as plaintiffs neither plead nor argue any such contacts even after months of expansive jurisdictional discovery. Instead, plaintiffs rely solely on contacts with the U.S., claiming that a defendant located anywhere in the U.S. is subject to personal jurisdiction in this Court under the Bankruptcy Rules. For the reasons discussed in the Moving Brief and herein, as well as in the reply brief filed contemporaneously herewith by the TCW Defendants, plaintiffs are wrong.

---

"[w]ithout [defendants] transferring assets to and from the United States, there could be no claims for subsequent transfers against [them]." *Maxam*, 460 B.R. at 118.

7

Under plaintiffs' theory, a defendant amenable to nationwide service of process under Bankruptcy Rule 7004(d) is "at home" and thus subject to general jurisdiction in every state from Hawaii to Maine. This expansive theory of national jurisdiction, however, is fundamentally inconsistent with the due process limitations on a court's exercise of general jurisdiction. Tellingly, plaintiffs do not even address the most salient and critical issue in this analysis: the United States Constitution. While Bankruptcy Rule 7004 provides for nationwide service of process, 7004(f) expressly requires that the exercise of personal jurisdiction under that rule be "consistent with the Constitution and laws of the United States." In that regard, the United States Supreme Court has made clear that under the Due Process Clause, except in "exceptional cases," an entity will only be subject to general jurisdiction in its state of incorporation and its principal place of business. *Daimler AG v. Bauman*, 134 S. Ct. 746, 761, n.19 (2014). Plaintiffs do not even attempt to plead or argue (nor could they) that this is an "exceptional case" under *Daimler*, but rather rest personal jurisdiction over the U.S. Defendants solely on the discredited argument that nationwide service of process necessarily includes nationwide personal jurisdiction.

Following *Daimler*, in *Sonera Holding B.V. v. Cukorova Holding A.S.*, 2014 WL 1645255 (2d Cir. Apr. 25, 2014), the Second Circuit found unconstitutional a sweeping exercise of general jurisdiction. There, the court clearly held that subjecting a corporation that was not incorporated in and did not have its principal place of business in New York -- such as the U.S. Defendants here -- would violate due process. *Id*. at *4. Moreover, no Second Circuit court has held, or even suggested, that Bankruptcy Rule 7004 somehow trumps the due process provisions of the Constitution and confers personal jurisdiction where, as here, it otherwise plainly would not exist.[10] Indeed, plaintiffs cite to only one case from this District decided after *Daimler* and

---

[10] In an attempt to sidestep these Constitutional constraints, plaintiffs cite to two Second Circuit opinions decided years before *Daimler* and *Sonera* addressing personal jurisdiction under Fed. R. Civ. P. 4(k), *Dardona Ltd. v. A.O.*

8

*Sonera*, but in that case the lack of personal jurisdiction required little analysis as the defendants had no contact with the U.S., much less New York. *Refco Group Limited v. Cantor Fitzgerald, L.P.*, 2014 WL 2610608, at *7-9 (S.D.N.Y. June 10, 2014); Pl. Br. at 16.[11] To the extent the *Refco* decision is of any assistance, it supports the U.S. Defendants, as the court expressly noted the lack of any New York contacts in its decision, holding that "because the foreign Defendants have insufficient contacts with the United States, they necessarily have insufficient contacts with the State of New York." *Id*. at *8.

These Constitutional concerns are particularly stark in this case -- a Chapter 15 adversary proceeding asserting solely state law claims filed by U.K. liquidators concerning a non-U.S. company and a non-U.S. transaction. While plaintiffs claim that "courts have found no obstacle in applying the national contacts test to an adversary proceeding related to a Chapter 15 case," Pl. Br. at 15, they cite to only one decision from a bankruptcy court in Florida for that proposition, which was decided well before *Daimler* and *Sonera*. *See British Am. Ins. Co. Ltd. v. Fullerton (In re British Am. Ins. Co. Ltd.)*, 2013 WL 1881712 (Bankr. S.D. Fla. Apr. 30, 2013). Defendants are not aware of any other case that similarly applied Bankruptcy Rule 7004 in the

---

*Yuganskneftegaz*, 317 F.3d 202 (2d Cir. 2003) and *Porina v.Marward Shipping Co.*, 521 F.3d 122 (2d Cir. 2008). Pl. Br. at 12-13. These decisions, however, do not analyze the Constitutional issues in any detail, much less in a manner consistent with *Daimler* and *Sonera*. Moreover, at least one court has considered the application of FRCP 4(k)(2) in light of *Daimler, Best Odds Corp. v. iBus Media Ltd.*, 2014 WL 2527145, at *5 (D. Nev. June 4, 2014), and held that *Daimler* effectively precludes a court from ever exercising general jurisdiction over a defendant solely based on the nationwide service of process provisions of that rule: "[U]nder the 'at home' standard reiterated in *Daimler AG*, it is unlikely that a court could ever find general jurisdiction under Rule 4(k)(2). Indeed, a finding that a corporate defendant 'is fairly regarded as at home' within the United States would seemingly preclude a finding that the same corporate 'defendant is not subject to jurisdiction in any state's courts of general jurisdiction,' as is required under Rule 4(k)(2)(A)." The same result should apply under Rule 7004.

[11] Plaintiffs' other citations to several cases from courts outside this District do not support their jurisdictional claims here. Indeed, in *West v. Posey (In re Hot-Hed, Inc.),* 2014 WL 2919340, at *2-3 (Bankr. S.D. Tex. June 26, 2014) -- the only case cited by Plaintiffs that applied Rule 7004 while also analyzing *Daimler* -- the court expressly considered the defendants' contacts with the forum state, Texas, and not the United States generally. *Bastian v. Fast EFNDS LLC*, 2014 WL 644569 (Bankr. E.D. Wis. Feb. 18, 2014) does not even cite to, much less analyze the impact of, *Daimler* and thus is of no guidance here. Plaintiffs' remaining citations do not even address Rule 7004. *See Rockwell Automation, Inc. v. Beckhoff Automation*, LLC, 2014 WL 2459604 (D. Nev. May 30, 2014) (applying Rule 4(k)); *Jennings v. Bonus Bldg. Care, Inc.*, 2014 WL1806776 (W.D. Mo. May 7, 2014) (applying nationwide service of process analysis in the context of RICO claims).

context of a Chapter 15 adversary proceeding, and *In re British American* does not appear to have been cited by any other court.

In sum, the allegations of the complaint relating to the U.S. Defendants are devoid of any reference to New York contacts. Even after pursuing lengthy jurisdictional discovery, plaintiffs do not argue that there are New York contacts sufficient for general jurisdiction or that this is an "exceptional case" under *Daimler* permitting the exercise of personal jurisdiction outside the defendant's state of incorporation and principal place business. As such, personal jurisdiction over the U.S. Defendants is predicated solely on the nationwide service provision of Bankruptcy Rule 7004, which cannot support the exercise of such jurisdiction in light of *Daimler* and *Sonera*.

## CONCLUSION

For all the foregoing reasons as well those discussed in the Moving Brief, the Court should dismiss the complaint as to each of the Moving Defendants for lack of personal jurisdiction.

Dated: New York, New York
      August 11, 2014

| ROPES & GRAY LLP | KASOWITZ, BENSON, TORRES & FRIEDMAN LLP |
|---|---|
| By: */s/ Robert S. Fischler* <br>     Robert S. Fischler <br>     Stephen C. Moeller-Sally | By: */s/ Paul M. O'Connor III* <br>     Paul M. O'Connor III <br>     Andrew K. Glenn |
| 1211 Avenue of the Americas <br> New York, New York 10036 <br> Telephone: (212) 596-9000 <br> Facsimile: (212) 596-9090 | 1633 Broadway <br> New York, New York 10019 <br> Telephone: (212) 506-1700 <br> Facsimile: (212) 506-1800 |
| *Attorneys for the Apax Defendants* | *Attorneys for the TPG Defendants* |