**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **FOR PUBLICATION** |
| HELLAS TELECOMMUNICATIONS (LUXEMBOURG) II SCA, | Chapter 15 |
| | Case No. 12-10631 (MG) |
| Debtor in a Foreign Proceeding. | |
| ANDREW LAWRENCE HOSKING and SIMON JAMES BONNEY, in their capacity as joint compulsory liquidators and duly authorized foreign representatives of HELLAS TELECOMMUNICATIONS (LUXEMBOURG) II SCA, | |
| Plaintiffs, | Adv. Proc. No. 14-01848 (MG) |
| -against- | |
| TPG CAPITAL MANAGEMENT, L.P., *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR LIMITED REARGUMENT OF MOTION TO DISMISS ADVERSARY PROCEEDING SOLELY WITH RESPECT TO 11 U.S.C. § 546(e) AND DENYING MOTION TO DISMISS UNJUST ENRICHMENT CLAIM**

*A P P E A R A N C E S :*

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
*Attorneys for the TPG Defendants*
1633 Broadway
New York, NY 10019
By:     Paul M. O'Connor III, Esq.
        Andrew K. Glenn, Esq.

ROPES & GRAY LLP
*Attorneys for Apax Partners, L.P.*
1211 Avenue of the Americas
New York, NY 10036
By:     Robert S. Fischler, Esq.
        Stephen C. Moeller-Sally, Esq.

CHADBOURNE & PARKE LLP
*Attorneys for Plaintiffs*
1301 Avenue of the Americas
New York, NY 10019
By:    Howard Seife, Esq.
        Andrew Rosenblatt, Esq.
        Marc D. Ashley, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the *Motion of TPG Defendants and Apax Partners, L.P. for Limited Reargument of Motion to Dismiss Adversary Proceeding Solely with Respect to 11 U.S.C. § 546(e)* (the "Reargument Motion," ECF Doc. # 139),[1] filed by defendants TPG Capital Management, L.P., David Bonderman, James Coulter, TPG Advisors IV, Inc., TPG GenPar IV, L.P., TPG Partners IV, L.P., T[3] Advisors II, Inc., T[3] GenPar II, L.P., T[3] Partners II, L.P., T[3] Parallel II, L.P. (collectively, the "TPG Defendants"), and Apax Partners, L.P. ("Apax," and together with the TPG Defendants, the "Movants"). The plaintiffs (the "Plaintiffs") filed an objection to the Reargument Motion (the "Objection," ECF Doc. # 144),[2] and the Movants filed a reply (the "Reply," ECF Doc. # 146).

On January 29, 2015, the Court issued its *Memorandum Opinion and Order Granting in Part and Denying in Part Defendants' Motions to Dismiss* (the "Prior Opinion," ECF Doc. # 135), granting the motion to dismiss (the "Motion to Dismiss," ECF Doc. # 41)[3] the complaint (the "Complaint," ECF Doc. # 1) filed in the above-captioned adversary proceeding (the "Adversary Proceeding") as to the Plaintiffs' New York Debtor and Creditor Law ("NYDCL") claims asserted against all of the named defendants (the "Defendants") (*see* Prior Opinion at 46,

---

[1]        The Reargument Motion is cited herein as "Rearg. Mot."

[2]        The Objection is cited herein as "Obj."

[3]        The Motion to Dismiss is cited herein as "MTD."

59), and dismissing the Complaint as to certain foreign-based defendants (the "Non-U.S. Defendants") for lack of personal jurisdiction (*see id.* at 32);[4] but the Plaintiffs' unjust enrichment claim against the Movants survived (*see id.* at 60, 72). *See Hosking v. TPG Capital Management, L.P. (In re Hellas Telecommunications (Luxembourg) II SCA*, 524 B.R. 488 (Bankr. S.D.N.Y. 2015).

On February 13, 2015, the Movants filed the Reargument Motion seeking limited reargument of their Motion to Dismiss.[5]  The Reargument Motion rests on the assertion that the Plaintiffs' unjust enrichment claim is barred by section 546(e) of the Bankruptcy Code.  (*See* Rearg. Mot. at 1–2.)  The Movants previously raised this argument in their Motion to Dismiss and now assert that the Court failed to consider this argument in its Prior Opinion.  The Reargument Motion also asserts that the Second Circuit's decision, *In re Bernard L. Madoff Investment Securities LLC*, 773 F.3d 411 (2d Cir. 2014), regarding section 546(e), "constitutes an intervening change in controlling law" that the Movants could not address in their Motion to Dismiss.  (Rearg. Mot. ¶ 28.)

The Plaintiffs object to the Reargument Motion on the grounds that it (i) is untimely by one day; (ii) improperly raises new arguments not set forth in the Motion to Dismiss; (iii) fails to identify an intervening change in controlling law; (iv) fails to identify any controlling authority

---

[4]     Specifically, the Non-U.S. Defendants consist of the following entities affiliated with the Movants:  TPG Capital LLP, Apax Partners LLP, Martin Halusa, Apax WW Nominees, Ltd., Apax Partners Europe Managers Ltd., Apax Europe VI GP Co. Ltd., Apax Europe VI GP, L.P., Apax Europe VI-A, L.P., and Apax Europe VI-1, L.P. With the exception of Apax, the Movants and the Non-U.S. Defendants filed a motion to dismiss for lack of personal jurisdiction (ECF Doc. # 37), which the Court granted as to the Non-U.S. Defendants but denied as to the Movants.  (*See* Prior Opinion at 32–33.)

[5]     The Motion to Dismiss was filed by the Movants and the Non-U.S. Defendants and was joined in substantial part by the other Defendants.  (*See* Prior Opinion at 10 n.11.)  Although the Movants and the Non-U.S. Defendants filed the Motion to Dismiss collectively, this Opinion refers solely to the arguments made in the Motion to Dismiss as they relate to the Movants; the Court dismissed all claims against the Non-U.S. Defendants for lack of personal jurisdiction.  (*See id.* at 32.)

overlooked by the Court; and (v) fails to successfully set forth that section 546(e) preempts the
Plaintiffs' unjust enrichment claim.  (Obj. at 1.)

The Movants counter each of the Plaintiffs' arguments in the Reply.  First, the Movants
contend that the Reargument Motion was timely filed under the Federal Rules of Bankruptcy
Procedure (the "Bankruptcy Rules") because the purported deadline to file the Reargument
Motion fell on a holiday, giving them an extra day to file.  (*See* Reply ¶¶ 1–4.)  Second, the
Movants assert that the Reargument Motion does not improperly raise a new argument; rather, it
is premised on the Court purportedly overlooking an argument raised in the Motion to Dismiss,
which is further supported by the Second Circuit's *Madoff* decision.  (*See id.* 5–7.)  Third, the
Movants argue that *Madoff* does constitute an intervening change in controlling law under the
circumstances.  (*See id.* ¶¶ 8–11.)  Fourth, the Movants assert that the language of the Prior
Opinion indicates that the Court may have overlooked their argument that section 546(e)
preempts the Plaintiffs' unjust enrichment claim, and, "[c]ontrary to the Objection . . . , there is
no requirement that the argument the Court overlooked be based on controlling authority."  (*Id.*
¶ 13 (emphasis omitted).)  Finally, the Movants argue that the Plaintiffs are incorrect on the
merits—section 546(e) indeed preempts the unjust enrichment claim.  (*See id.* ¶¶ 14–17.)

As a preliminary matter, the Court holds that the Reargument Motion was timely filed
pursuant to Bankruptcy Rule 9006(a).  The Court further finds that the Reargument Motion
establishes a sufficient basis for the Court to review the limited portion of its Prior Opinion at
issue and therefore **GRANTS** the Reargument Motion.  As explained more fully below, the
Movants are correct that the Prior Opinion did not address the merits of the Movants' argument
that section 546(e) bars the Plaintiffs' unjust enrichment claim.  Rather, the Prior Opinion only
mentioned section 546(e) in the context of the Plaintiffs' NYDCL claims, finding it unnecessary
to address the provision's applicability because the NYDCL claims were dismissed on other

grounds.  (*See* Prior Opinion at 15 n.23.)  Accordingly, the Court addresses the Movants' section

546(e) argument as it pertains to the Plaintiffs' unjust enrichment claim below.  Nevertheless, the

Court concludes that the unjust enrichment claim alleged in the Complaint does not fall within

section 546(e)'s bar and that issues regarding the extraterritorial reach of section 546(e) and

choice of law render a conclusion based on the current pleadings premature.  Therefore, the

Court adheres to its holding in the Prior Opinion and **DENIES** the Motion to Dismiss the unjust

enrichment claim against the Movants under section 546(e).

## I.    BACKGROUND[6]

The Plaintiffs filed the Complaint alleging that in December 2006, Hellas

Telecommunications (Luxembourg) II S.C.A. ("Hellas II") issued €960 million and $275 million

of Floating Rate Subordinated Notes (the "Sub Notes"), the proceeds of which were used to pay

certain advisor fees (the "Consulting Fees Transfer") and fund the multi-step redemption (the

"December 2006 CPEC Redemption") of convertible preferred equity certificates ("CPECs").

(*See* Compl. ¶¶ 12, 118.)  According to the Plaintiffs, the December 2006 CPEC Redemption

was executed as follows:  Nearly €1 billion of the proceeds of the Sub Notes issued by Hellas II

were used to redeem CPECs that Hellas II had issued to its parent, Hellas Telecommunications I,

S.a.r.l. ("Hellas I") (*id.* ¶¶ 118–119); Hellas I used the proceeds of this redemption to redeem

CPECs that Hellas I had issued to its parent, Hellas Telecommunications S.a.r.l. ("Hellas," and

together with Hellas I and Hellas II, the "Hellas Entities"); and Hellas used the proceeds of this

redemption to redeem CPECs that Hellas had issued to eight investment funds that owned and

controlled the Hellas Entities (the "Sponsors") (*id.* ¶¶ 40, 118–119).[7]  Through the Sponsors, the

---

[6]    This Opinion recounts the facts only to the extent relevant to the Reargument Motion.  For a fuller
recitation of the facts, see the Prior Opinion.  (*See* Prior Opinion at 6–11.)

[7]    The initial transfers from Hellas II to Hellas I were made between Luxembourg entities (*see* Compl. ¶ 86),
from accounts maintained in London, England (*see* Prior Opinion at 9).

Movants and the Non-U.S. Defendants allegedly caused the Hellas Entities to effectuate the

December 2006 CPEC Redemption in order to transfer payments to the Defendants to the

detriment of Hellas II.  (*See id.* ¶¶ 23–74, 118.)  The Plaintiffs allege that the transfers the

Defendants received in connection with the December 2006 CPEC Redemption constitute actual

and constructive fraudulent transfers under the NYDCL.  (*See id.* ¶¶ 155–168.)  Additionally, the

Plaintiffs allege that the Movants and the Non-U.S. Defendants were unjustly enriched by the

amounts they received in connection with the December 2006 CPEC Redemption and the

Consulting Fees Transfer.  (*See id.* ¶¶ 169–173.)

In the Prior Opinion, the Court dismissed all claims asserted against the Non-U.S.

Defendants for lack of personal jurisdiction (*see* Prior Opinion at 32), but held that the Movants

are subject to personal jurisdiction (*see id.* at 33).  The Court also granted the Motion to Dismiss

the Plaintiffs' NYDCL claims (*see id.* at 46, 59), but denied the Motion to Dismiss the unjust

enrichment claim against the Movants (*see id.* at 60).  The Court considered and rejected the

Movants' arguments that the unjust enrichment claim must be dismissed for lack of standing,

untimeliness, and failure to state a claim.  (*See id.* at 60–71.)  However, the Prior Opinion did not

address the Movants' argument that section 546(e) of the Bankruptcy Code bars the Plaintiffs'

unjust enrichment claim.

In the Motion to Dismiss, the Movants' section 546(e) argument averred that all of the

Plaintiffs' claims were barred by the statute, which applies to chapter 15 cases via section

561(d), because the December 2006 CPEC Redemption constitutes a "settlement payment," as

that term is used in section 546(e), and was made by, to, or for the benefit of a financial

institution.  (MTD at 39–42 (citing 11 U.S.C. § 561(d)).)  According to the Movants, the

definition of a "settlement payment" is broadly construed and includes redemption payments

made in the nature of the December 2006 CPEC Redemption payments at issue.  (*See id.* at 41

(citations omitted).)  The Movants further stated that "[t]he Bankruptcy Code defines a financial institution to include essentially any kind of bank," including the banks used to facilitate the December 2006 CPEC Redemption, and therefore, "Hellas II's transfer of cash to Hellas I . . . made by, and to, a financial institution" is subject to section 546(e).  (*Id.* at 41–42 (citing 11 U.S.C. § 101(22)).)  Consequently, the Movants argued that section 546(e) bars the avoidance of the December 2006 CPEC Redemption via the NYDCL fraudulent transfer provisions.  (*See id.* at 39.)  The Movants further argued in a footnote that the Plaintiffs' unjust enrichment claim is also barred by section 546(e) because it "is based on exactly the same facts and seeks exactly the same relief as the fraudulent transfer claims."  (*Id.* at 42 n.15 (citing *Contemporary Industries Corp. v. Frost (In re Contemporary Industries Corp.)*, 564 F.3d 981 (8th Cir. 2009) (holding that state law unjust enrichment claims were barred by section 546(e) because they were premised on the same facts supporting fraudulent transfer claims subject to section 546(e)).)

The Movants now seek limited reargument of the Motion to Dismiss, solely with respect to their argument that section 546(e) bars the Plaintiffs' unjust enrichment claim.  (Rearg. Mot. at 2–3.)  In support of the Reargument Motion, the Movants also assert that the recent Second Circuit decision in *Madoff* constitutes an "intervening change in controlling law."  (*Id.* ¶ 28 (citing *Madoff*, 773 F.3d 411).)

## II.   DISCUSSION

### A.   The Reargument Motion is Timely

Local Bankruptcy Rule 9023-1(a) provides:

> A motion for reargument of a court order determining a motion shall be served within fourteen (14) days after the entry of the Court's order determining the original motion, or in the case of a court order resulting in a judgment, within fourteen (14) days after the entry of the judgment, and, unless the Court orders otherwise, shall be made returnable within the same amount of time as required for the original motion.  The motion shall set forth concisely the matters or controlling decisions which counsel

7

> believes the Court has not considered.  No oral argument shall be
> heard unless the Court grants the motion and specifically orders
> that the matter be reargued orally.

BANKR. S.D.N.Y. R. 9023-1(a).[8]

The standard applicable to a motion for reargument or reconsideration is identical to that applicable to a motion to alter or amend a judgment under Federal Rule of Civil Procedure ("FRCP") 59(e).  *Henderson v. Metro. Bank & Trust Co.*, 502 F. Supp. 2d 372, 375 (S.D.N.Y. 2007); *accord Samuel's Temple Church of God in Christ v. Parade Place, LLC (In re Parade Place, LLC)*, 508 B.R. 863, 868–69 (Bankr. S.D.N.Y. 2014) (citations omitted).  Bankruptcy Rule 9023 incorporates FRCP 59 and provides that "[a] motion . . . to alter or amend a judgment shall be filed . . . *no later* than 14 days after entry of judgment."  FED. R. BANKR. P. 9023 (emphasis added).  Bankruptcy Rule 9006, governing the computation of the 14-day time period, provides:

> When the period is stated in days or a longer unit of time:
>
> (A) exclude the day of the event that triggers the period;
>
> (B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and
>
> (C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

*Id.* 9006(a)(1); *see also In re 231 Fourth Ave. Lyceum, LLC*, 513 B.R. 25, 29 (Bankr. E.D.N.Y. 2014) ("In bankruptcy cases, Bankruptcy Rule 9006 governs the computation of time periods, not [FRCP] 6." (citing FED. R. BANKR. P. 9006)).

The Prior Opinion was issued on January 29, 2015.  Excluding that date, the 14-day period applicable to a Bankruptcy Rule 9023 motion ended on February 12, 2015.  However, the

---

[8]      Local Bankruptcy Rule 9023-1(a) derives from Former Local Bankruptcy Rule 13(j) and is an adaptation of Civil Rule 6.3 of the Local District Rules.  *See* BANKR. S.D.N.Y. R. 9023-1 cmt.

Court was closed on February 12, 2015 in observance of President Lincoln's birthday.  Because

the clerk's office was not accessible on February 12, 2015, the Movants last day to timely file the

Reargument Motion was February 13, 2015, the date on which it was filed.  *See* FED. R. BANKR.

P. 9006(a)(3)(A) (providing that, where the clerk's office is not accessible "on the last day for

filing under Rule 9006(a)(1), then the time for filing is extended to the first accessible day that is

not a Saturday, Sunday, or legal holiday").  Accordingly, the Reargument Motion is timely.[9]

### B.    The Reargument Motion Is Granted

The standard for granting a motion for reargument is "strictly construed to avoid

repetitive arguments on issues that the court has already fully considered."  *In re Asia Global

Crossing, Ltd.*, 332 B.R. 520, 524 (Bankr. S.D.N.Y. 2005) (citations omitted).  FRCP 59 is not a

proper "vehicle for relitigating old issues, presenting the case under new theories, securing a

rehearing on the merits, or otherwise taking a 'second bite at the apple' . . . ."  *Sequa Corp. v.

GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998) (citations omitted).  "[T]he decision to grant or

deny a motion for reconsideration is within the sound discretion of the district court."  *Griffin

Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999) (citation omitted).

"A motion for reconsideration should be granted only when the defendant identifies 'an

intervening change of controlling law, the availability of new evidence, or the need to correct a

clear error or prevent manifest injustice.'"  *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL

Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l

Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).  In particular, the party moving for

---

[9]    Additionally, "[t]he Court has authority under [FRCP] 54(b), as well as the inherent power of the court, to
reconsider a prior decision at any time before the entry of final judgment."  *Richman v. W.L. Gore & Assocs., Inc.*,
988 F. Supp. 753, 755 (S.D.N.Y. 1997) (citing *Dictograph Prods. Co. v. Sonotone Corp.*, 230 F.2d 131, 134–35 (2d
Cir. 1956) (Hand, J.)); *see* FED. R. BANKR. P. 7054 (setting forth that FRCP 54(b) applies in adversary proceedings);
FED. R. CIV. P. 54(b) ("[A]ny order or other decision . . . that adjudicates fewer than all the claims or the rights and
liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all
the claims and all the parties' rights and liabilities.").

reconsideration "must show that the court overlooked controlling decisions or factual matters that might materially have influenced its earlier decision." *Parade Place*, 508 B.R. at 869 (internal quotation marks omitted) (quoting *Asia Global Crossing*, 332 B.R. at 524); *see Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (affirming district court's decision to grant reconsideration motion in light of the movant presenting the court "with data that the court had not previously considered"); *Sanluis Devs., L.L.C. v. CCP Sanluis, L.L.C.*, 556 F. Supp. 2d 329, 332 (S.D.N.Y. 2008) (granting reconsideration motion where the court's prior opinion "did not address the question raised by the parties' papers regarding the effect of a dismissal on the petitioner").

The Movants assert two bases for reconsideration of the Prior Opinion:  First, the Movants argue that the Court did not consider their argument that section 546(e) bars the Plaintiffs' unjust enrichment claim (*see* Rearg. Mot. ¶ 27), and second, the Second Circuit's *Madoff* decision "constitutes an intervening change in controlling law, which Movants did not have the opportunity to include in their briefing or present to the Court at oral argument" (*id.* ¶ 28).  In response, the Plaintiffs contend that the Movants impermissibly raise a new argument for the first time in the Reargument Motion, namely that the "transfers made in connection with the December 2006 CPEC Redemption were 'transfers in connection with a securities contract' that are protected under section 546(e) of the Bankruptcy Code" (Obj. at 4), as opposed to "settlement payments," as argued in the Motion to Dismiss (*id.* at 4 n.4).  The Plaintiffs also argue that (i) the Second Circuit's *Madoff* decision does not constitute an intervening change in controlling law (*see id.* at 6–8); (ii) the Court did not overlook controlling authority in issuing the Prior Opinion (*see id.* at 8–9); and (iii) section 546(e)'s safe harbor does not bar the Plaintiffs' unjust enrichment claim (*see id.* at 9–11).

10

The Court concludes that it is appropriate to **GRANT** the Reargument Motion in light of the fact that the Prior Opinion did not address the Movants' argument that section 546(e) bars the Plaintiffs' unjust enrichment claim.[10]   However, the Court concludes that further oral argument is unnecessary (*see* BANKR. S.D.N.Y. R. 9023-1(a) ("No oral argument shall be heard unless the Court grants the motion and specifically orders that the matter be reargued orally")), and based on the current Complaint, the Court concludes below that section 546(e) does not bar or preempt the unjust enrichment claim.

### C.     The Motion to Dismiss the Unjust Enrichment Claim Remains Denied

"Bankruptcy courts will enforce the safe harbor provisions of the Bankruptcy Code in appropriate cases by dismissing avoidance actions on the pleadings." *Official Comm. of Unsecured Creditors of Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman Bros. Holdings Inc.)*, 469 B.R. 415, 434 (Bankr. S.D.N.Y. 2012) (citation omitted). Section 546(e) of the Bankruptcy Code provides:

> Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not avoid a transfer that is a margin payment, as defined in section 101, 741, or 761 of this title, or settlement payment, as defined in section 101 or 741 of this title, made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, or that is a transfer made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, in connection with a securities contract, as defined in section 741(7), commodity contract, as defined in section 761(4), or forward contract, that is made before the commencement of the case, except under section 548(a)(1)(A) of this title.

---

[10]      Because the Court grants the Reargument Motion on the basis that the Prior Opinion did not address "controlling decisions or factual matters that might materially have influenced its earlier decision," *see Parade Place*, 508 B.R. at 869, the Court does not decide whether *Madoff* constitutes an intervening change in controlling law.

11 U.S.C. § 546(e).  Section 546(e) provides a safe harbor that "prohibit[s] the avoidance of

'settlement payments' made by, to, or on behalf of a number of participants in the financial

markets."  *In re Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 334 (2d

Cir. 2011).  Additionally, section 546(e) prohibits the avoidance of, among other things,

payments made by or to financial institutions in connection with a "securities contract."  *See*

*Madoff*, 773 F.3d at 416.  The Second Circuit has defined a settlement payment as a "transfer of

cash made to complete a securities transaction."  *Official Comm. of Unsecured Creditors of*

*Quebecor World (USA) Inc. v. Am. United Life Ins. Co. (In re Quebecor World (USA) Inc.)*, 719

F.3d 94, 98 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Enron*, 651 F.3d at 339);

*see also* 11 U.S.C. §§ 101(51A), 741(8) (defining "settlement payment").  While such a transfer

must be made by, to, or on behalf of a financial intermediary, "a transfer may qualify for the

section 546(e) safe harbor even if the financial intermediary is merely a conduit."  *Quebecor*,

719 F.3d at 99 (citations omitted).

     In *Madoff*, the Second Circuit determined that section 546(e) shielded the avoidance of

transfers of funds to customers of a Ponzi scheme on account of fictitious profits attributed to

them.  *See Madoff*, 773 F.3d at 414–15.  The court held that section 546(e) barred the avoidance

of these transfers "because they were 'made in connection with a securities contract,' and were

also 'settlement payment[s].'"  *Id.* at 417.  The *Madoff* court examined the language of section

741(7) of the Bankruptcy Code, which defines "securities contract" as used in section 546(e),

and found that "the term 'securities contract' expansively includes contracts for the purchase or

sale of securities, as well as any agreements that are *similar* or *related* to contracts for the

purchase or sale of securities."  *Id.* at 418 (emphasis in original) (citing 11 U.S.C.

§§ 741(7)(A)(i), (vii), (x), (xi)).  The court found that the documents applicable to the customers'

accounts constituted securities contracts because they established the relationship between the

customer and the broker, setting forth, among other things, the terms by which the broker would

trade securities for the customer.  *See id.* at 418–19.  The customer account documents

constituted securities contracts notwithstanding the fact that the securities transactions

contemplated by the customer-broker were never actually executed or completed because the

provisions of section 741(7) and 546(e) do not contain a purchase or sale requirement.  *Id.* at 420

("[W]hether an agreement satisfies the definition of 'securities contract' does not depend on the

broker's performance, because a breach of a contract neither changes nor nullifies the nature of

the underlying agreement.").  Additionally, the court held that the subject transfers were made

"in connection with" a securities contract, notwithstanding that the transfers constituted fictitious

payments, noting that "the fact that a payment was made in connection with a Ponzi scheme does

not mean that i[t] was not at the same time made in connection with a (breached) securities

contract."  *Id.* at 422.

Assuming, without deciding, that the transfers made in connection with the December

2006 CPEC Redemption are settlement payments or payments made in connection with a

securities contract, by or to a financial institution, the Court finds that section 546(e) does not bar

the Plaintiffs' unjust enrichment claim at this stage of the pleadings.  As explained more fully

below, the Motion to Dismiss is **DENIED** on this basis.

         1.      *Section 546(e) Does Not Preempt the Unjust Enrichment Claim*

Several courts have held that section 546(e) of the Bankruptcy Code preempts state law

claims that are premised on recovering transfers protected from avoidance under section 546(e).

*See Contemporary Indus.*, 564 F.3d at 988 ("Allowing recovery on these [state law] claims

would render the § 546(e) exemption meaningless, and would wholly frustrate the purpose

behind that section."); *accord AP Servs. LLP v. Silva*, 483 B.R. 63, 71 (S.D.N.Y. 2012) ("Indeed,

'[a]llowing recovery for unjust enrichment . . . would implicate the same concerns regarding the

unraveling of settled securities transactions . . . which is precisely the result that section 546(e)

precludes.'"); *Official Comm. of Unsecured Creditors of Hechinger Inv. Co. of Del., Inc. v. Fleet*

*Retail Fin. Grp. (In re Hechinger Inv. Co. of Del., Inc.)*, 274 B.R. 71, 96 (D. Del. 2002) ("Claims

that Congress deemed unavoidable under sections 544(b) and 546(e) of the Bankruptcy Code

cannot be avoided by simply re-labeling avoidance claims as unjust enrichment claims; if they

could, the exemption set forth in section 546(e) would be rendered useless.").  However, in these

cases, the allegations underlying the plaintiffs' unjust enrichment claim were substantially

identical to the allegations underpinning the plaintiffs' constructive fraudulent transfer claims.

*See Contemporary Indus.*, 564 F.3d at 984, 988 (affirming district court order, which affirmed

bankruptcy court's holding that "claims for unjust enrichment . . . were preempted, inasmuch as

those claims sought essentially the same relief as the avoidance claims barred by § 546(e)"); *AP*

*Servs. LLP*, 483 B.R. at 71 n.65 ("In this case, like in *Hechinger* and *Contemporary Industries*,

the Trustee alleges that '[a]ll defendants were substantially enriched by their receipt of money

transfers from the LBO transaction'—the exact allegations that underlie its attempt to avoid the

transfer under the Bankruptcy Code."); *Hechinger*, 274 B.R. at 96 ("The Committee seeks the

same remedy under its unjust enrichment claim as that sought under its fraudulent transfer

claim—to avoid the transactions and recover payments that were made in exchange for the

tender of Hechinger shares by Hechinger shareholders.").

　　　　Where, as here, the common law claim alleges facts substantially identical to an *actual*

fraudulent conveyance claim under section 548(a)(1)(A), the result is different.  For example, in

*Lehman*, the court held that certain claims to avoid and recover constructively fraudulent and

preferential transfers under sections 544, 547, and 548 of the Bankruptcy Code were shielded

from avoidance under section 546(e), *see Lehman Bros.*, 469 B.R. at 435, but section 546(e) did

not bar many of the plaintiffs' common law claims, including claims for unjust enrichment, *see*

*id.* at 450–51.  The *Lehman* court noted that "[t]he plain language of section 546(e), read

literally, provides limited immunity but does not bar Plaintiffs from maintaining all common law

claims, intentional fraud claims and any other claims not expressly embraced by section 546(e)."

*Id.* at 450.  The court found that the plaintiffs' amended complaint sufficiently pleaded "badges

of fraud" and complied with the particularity requirements for pleading fraudulent intent under

FRCP 9(b).  *Id.* at 451.  Additionally, the court rejected the defendant's argument "that federal

bankruptcy law preempts certain of the Plaintiffs' unjust enrichment and conversion claims . . . ."

*Id.*  The court distinguished *Contemporary Industries* and *Hechinger*, noting that "in both of

these cases, . . . the unjust enrichment claims were identical to the plaintiffs' constructively

fraudulent transfer claims under the Bankruptcy Code and also were based upon the same facts

as these constructive fraud claims."  *Id.* (citing *Contemporary Indus.*, 564 F.3d at 984, 988;

*Hechinger*, 274 B.R. at 96).  By contrast, the common law claims at issue in *Lehman*, including

the unjust enrichment claims "have more in common with claims grounded in actual fraudulent

intent."  *Id.*  Accordingly, the court held that such claims were "not to be treated as replicas of

claims to recover constructively fraudulent transfers," and therefore, they survived the

defendant's motion to dismiss.  *Id.*

　　　The Court concludes that the Plaintiffs' unjust enrichment claim—like the unjust

enrichment claims at issue in *Lehman*—is not a mere replica of the Plaintiffs' NYDCL

constructive fraudulent conveyance claim that may be unavoidable under section 546(e), but

rather has "more in common with" an actual fraudulent conveyance claim excepted from section

546(e)'s safe harbor.  At this stage of the pleadings, the Complaint sufficiently alleges that the

transfers underlying the Plaintiffs' unjust enrichment claim were made with actual fraudulent

intent, and therefore, this claim is not barred or preempted by section 546(e) of the Bankruptcy

Code.

Section 548(a)(1)(A) of the Bankruptcy Code provides in relevant part:

> The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> > (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, [or] indebted . . . .

11 U.S.C. § 548(a)(1)(A). A plaintiff alleging an actual fraudulent transfer under section 548(a)(1)(A) must "state with particularity the circumstances constituting fraud." *Lehman Bros.*, 469 B.R. at 446 (quoting FED. R. CIV. P. 9(b)). "However, courts take a more liberal view when examining allegations of actual fraud that are pled by a bankruptcy trustee in the context of a fraudulent conveyance, since 'a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge.'" *Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.)*, 361 B.R. 369, 395 (Bankr. S.D.N.Y. 2007) (quoting *Picard v. Taylor (In re Park S. Sec., LLC)*, 326 B.R. 505, 517–18 (Bankr. S.D.N.Y. 2005)).[11] "In such circumstances, courts will allow allegations of circumstantial evidence to establish fraudulent intent, such as the well-established 'badges of fraud.'" *Id.* (citing *Park S. Sec., LLC*, 326 B.R. at 517–18); *see Enron Corp. v. Credit Suisse First Bos. Int'l (In re Enron Corp.)*, 328 B.R. 58, 73 (Bankr. S.D.N.Y. 2005) ("[B]ecause establishing a transferor's actual intent is ordinarily not susceptible to direct proof, courts look to the totality of the circumstances and certain 'badges of fraud.'" (citing *Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.)*, 310 B.R. 500, 505 (Bankr. S.D.N.Y. 2002))).

---

[11] As set forth in the Prior Opinion, "[w]ith the exception of the relief available under the Bankruptcy Code's avoidance powers, the Plaintiffs, as foreign representatives of the Debtor, may be granted any relief available to a trustee." (Prior Opinion at 62 (citing 11 U.S.C. § 1521(a)(7)).)

Specifically, courts have relied on the following badges of fraud to infer a transferor's

actual fraudulent intent for purposes of section 548(a)(1)(A):

> 1) a close relationship among parties to the transaction;
> 2) a secret or hasty transfer not in the usual course of business;
> 3) the inadequacy of the consideration;
> 4) the transferor's knowledge of other creditor's claims and the debtor's inability to pay them;
> 5) use of dummies or fictitious parties; and
> 6) retention of control or reservation of rights in the transferred property by the transferor after the conveyance.

*Enron Corp.*, 328 B.R. at 73 (Bankr. S.D.N.Y. 2005) (quoting *Manhattan Inv. Fund*, 310 B.R. at

505 n.3).  However, even where plaintiffs "are relieved of some of the rigors of Rule 9(b), they

still must plead the intent of the transferor (under the Bankruptcy Code) . . . ."  *MarketXT*

*Holdings*, 361 B.R. at 396.

For purposes of alleging a claim under section 548(a)(1)(A), "intent of the transferee is

imputed to the transferor only where the transferee is in a position to control 'the debtor's

disposition of his property.'"  *Id.* (quoting *Jackson v. Mishkin (In re Adler, Coleman Clearing*

*Corp.)*, 263 B.R. 406, 443 (S.D.N.Y. 2001)); *accord Weisfelner v. Fund 1. (In re Lyondell Chem.*

*Co.)*, 503 B.R. 348, 388 (Bankr. S.D.N.Y. 2014).  In *Adler, Coleman Clearing Corporation*, the

court observed:

> [T]he relevant inquiry more narrowly reduces to three elements. First is that the controlling *transferee* possesses the requisite intent to hinder, delay or defraud the debtor's creditors.  Second, the transferee "must be in a position to dominate or control."  And third, the pertinent domination and control relates to "the debtor's disposition of his property."

*Adler, Coleman*, 263 B.R. at 443 (emphasis in original) (citation omitted).

The Prior Opinion concluded "that the Plaintiffs [] sufficiently alleged their standing to

bring their unjust enrichment claim, as the allegations in the Complaint plausibly suggest that the

[Movants], through their affiliates, controlled Hellas II, thereby rendering them insiders," such

that the *Wagoner* rule and *in pari delicto* doctrine do not apply.  (Prior Opinion at 68.)  Many of the same allegations that supported this holding also support the inference that the December 2006 CPEC Redemption was made with actual fraudulent intent.

First, the Complaint alleges that the controlling transferees, in this case the Movants, "possesse[d] the requisite intent to hinder, delay or defraud the debtor's creditors."  *Adler, Coleman*, 263 B.R. at 443.  As set forth in detail in the Prior Opinion, the Complaint sufficiently alleges that the Movants and the Non-U.S. Defendants "dominated and controlled the management of Hellas II and exercised their control to accomplish the December 2006 CPEC Redemption."  (Prior Opinion at 67 (citing Compl. ¶¶ 95, 125–129).)  Among other things, the Complaint sets forth that the Movants and the Non-U.S. Defendants, through the Sponsors, "owned and controlled [Hellas II] and its affiliates and obtained proceeds from the December 2006 CPEC Redemption."  (Compl. ¶ 40.)  Key personnel of the Movants and the Non-U.S. Defendants allegedly "held overlapping positions of authority on the Board of Managers of Hellas (the sole manager of [Hellas II]) and in the management of the Sponsors," the Movants, and the Non-U.S. Defendants.  (*Id.* ¶ 95.)  The Complaint also alleges that "the December 2006 CPEC Redemption was agreed to, approved, and facilitated by [Hellas II], its sole manager Hellas, and the members of the Board of Managers of Hellas, in knowing disregard of the fact that [Hellas II] was insolvent or would be rendered insolvent thereby, and of the foreseeable disastrous consequences for [Hellas II] and its creditors, and in particular the holders of the Sub Notes."  (*Id.* ¶ 158(a).)  Finally, "the Consulting Fees Transfer was made in knowing disregard that [Hellas II] was insolvent or would be rendered insolvent thereby, and that [the Movants and the Non-U.S. Defendants] continued to siphon assets from [Hellas II] rather than providing any 'consulting' or 'management' services of reasonably equivalent value."  (*Id.* ¶ 158(f).)

Second, at this stage of the pleadings and as the Court intimated in its Prior Opinion, the

Complaint sufficiently alleges that the Movants were in a position to dominate or control

Hellas II.  *See Adler, Coleman*, 263 B.R. at 447 ("[I]n the typical case the person or entity

exercising control over the disposition of the debtor's property stands in a position to do so by

reason of a relationship of ownership, executive office or other insider role." (citations omitted));

*see also Consove v. Cohen (In re Roco Corp.)*, 701 F.2d 978, 984 (1st Cir. 1983) ("We may

impute any fraudulent intent of Consove to the transferor Roco because, as the company's

president, director, and sole shareholder, he was in a position to control the disposition of its

property." (citing 4 COLLIER ON BANKRUPTCY ¶ 548.02, 548-30 (Alan N. Resnick & Henry J.

Sommer eds., 15th ed. 1982))).  (*See also* Prior Opinion at 68 (citing Compl. ¶¶ 23–40).)

Likewise, the Plaintiffs have adequately alleged at this stage of the case that the Movants,

through their affiliated Non-U.S. Defendants and the Sponsors, were in a position to control

Hellas II.  (*See* Compl. ¶¶ 40–47, 95, 125–127.)

Third, the Complaint alleges that the Movants' control of Hellas II relates to Hellas II's

disposition of its property.  As set forth in the Prior Opinion:

> [T]he Plaintiffs allege that the applicable redemption agreement
> authorizing Hellas II's initial redemption of CPECs issued to
> Hellas I was executed by Giancarlo Aliberti and Matthias Calice—
> members of [certain Non-U.S. Defendants], respectively—on
> behalf of both Hellas entities.  (Compl. ¶ 125.)  A separate
> redemption agreement authorizing Hellas's redemption of CPECs
> issued to the Sponsors was also executed by Aliberti and Calice on
> behalf of Hellas and each of the eight Sponsors.  (*Id.* ¶ 125.)  Both
> redemption agreements recited that the applicable redemption price
> per CPEC had been "determined by the Board of Managers on the
> basis of the equity value of [Hellas II] and its Subsidiaries by
> resolutions adopted on December 18, 2006."  (*Id.* ¶¶ 125–126.)
> According to the Plaintiffs, these referenced resolutions adopted by
> Hellas, as sole manager and general partner of Hellas II, "were
> executed by the members of the Board of Managers of Hellas,
> including Maurizio Bottinelli, Giancarlo Aliberti, Matthias Calice,
> Philippe Costeletos, Guy Harles, and Benoit Duvieusart (all or

nearly all of whom were affiliated with [the Movants or the Non-
U.S. Defendants])." (*Id.* ¶ 127.)

(Prior Opinion at 67–68.)

Since the Plaintiffs' unjust enrichment claim is premised on allegations that the

December 2006 CPEC Redemption and the Consulting Fees Transfer were made with actual

fraudulent intent, which raise factual issues that cannot be appropriately resolved on a motion to

dismiss, the Court concludes that the unjust enrichment claim is not preempted by section 546(e)

of the Bankruptcy Code.

> 2.    *Dismissal of the Unjust Enrichment Claim Is Inappropriate Because the
>        Extraterritorial Effect of Section 546(e) Remains at Issue*

The Court further concludes that dismissing the unjust enrichment claim under section

546(e) would be inappropriate at this stage of the pleadings because it is unclear whether section

546(e) applies extraterritorially to the transfers underlying the Plaintiffs' unjust enrichment

claim.  Prior to the Court issuing its Prior Opinion, the parties briefed whether the NYDCL

applies extraterritorially, but failed to address whether the presumption against extraterritoriality

applies to section 546(e) under the circumstances.  (*See* Prior Opinion at 14–16.)  The

presumption against extraterritoriality "is a longstanding principle of American law that

legislation of Congress, unless a contrary intent appears, is meant to apply only within the

territorial jurisdiction of the United States."  *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247,

255 (2010) (internal quotation marks omitted) (quoting *EEOC v. Arabian Am. Oil Co.*, 499 U.S.

244, 248 (1991)).  Accordingly, "[w]hen a statute gives no clear indication of an extraterritorial

application, it has none."  *Id.*

There are two steps in determining whether the presumption against extraterritoriality

applies:  "first, whether the factual circumstances at issue require an extraterritorial application

of the relevant statutory provision; and second, if so, whether Congress intended for the statute to

apply extraterritorially." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R.

222, 226 (S.D.N.Y. 2014) (citing *Morrison*, 561 U.S. at 255–57; *Maxwell Commc'n Corp. plc v.*

*Societe Gen. plc (In re Maxwell Comm'cn Corp. plc)*, 186 B.R. 807, 816 (S.D.N.Y. 1995), *aff'd*,

93 F.3d 1036 (2d Cir. 1996)).  In determining whether application of a statute is extraterritorial,

rather than domestic, the Court must look to "the 'focus' of congressional concern," *Morrison*,

561 U.S. at 266, and determine the "objects of the statute's solicitude," *id.* at 267.

Section 546 of the Bankruptcy Code sets forth limitations on a trustee's avoidance

powers under the Bankruptcy Code generally, *see* 11 U.S.C. § 546, and its subsection (e)

specifically limits avoidance under the Bankruptcy Code of transfers that constitute a "margin

payment" or "settlement payment" made by, to, or for the benefit of certain financial institutions,

or transfers made by, to, or for the benefit of certain financial institutions in connection with a

"securities contract," "commodity contract," or "forward contract," except where avoidance is

sought under section 548(a)(1)(A), *see id.* § 546(e).  "Congress enacted Section 546(e) in order

to provide certainty to securities transactions and, in so doing, to enhance the stability of the

nation's financial markets." *In re Tribune Co. Fraudulent Conveyance Litig.*, 499 B.R. 310, 317

(S.D.N.Y. 2013) (citing H.R. Rep. No. 95-595, at 391 (1977); *Kaiser Steel Corp. v. Charles*

*Schwab & Co.*, 913 F.2d 846, 848 (10th Cir. 1990) (finding that Congress enacted section 546(e)

to "protect the nation's financial markets from the instability caused by the reversal of settled

securities transactions" (citing S. Rep. No. 95-989, at 8 (1978)))).

As the Movants argued in their Motion to Dismiss, "the initial transfer at the heart of this

case was a purely foreign transaction with *no* New York nexus (much less a 'very close' one):  it

involved the Luxembourg Debtor redeeming securities governed by Luxembourg law from a

Luxembourg transferee."  (MTD at 23 (emphasis in original) (setting forth that the subsequent

transfer from Hellas I to Hellas was also made from Luxembourg entities "with registered offices

in Luxembourg" (citing Compl. ¶ 86)).)  While the Court does not decide now whether section

546(e) applies extraterritorially to the transfers underlying the Plaintiffs' unjust enrichment

claim, it seems doubtful that Congress intended section 546(e) to apply to these predominantly

foreign transfers.

        3.       *Dismissal of the Unjust Enrichment Claim Is Premature Due to
Outstanding Choice of Law Issues*

Finally, the impact of section 546(e) on the Plaintiffs' unjust enrichment claim raises

potential choice of law issues that cannot be resolved at this time.  As the Court stated in its Prior

Opinion, "[t]here are three jurisdictions' laws potentially implicated in this case:  New York law,

U.K. law, and Luxembourg law."  (Prior Opinion at 38.)  With respect to the Plaintiffs' unjust

enrichment claim, the parties did not argue that an actual conflict existed between New York

law, on the one hand, and either U.K. law or Luxembourg law, on the other; therefore, the Court

applied New York law to the unjust enrichment claim.  (*Id.* at 39 (citing *Licci ex rel. Licci v.*

*Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012); *Park Place Entm't Corp. v.*

*Transcon. Ins. Co.*, 225 F. Supp. 2d 406, 408 (S.D.N.Y. 2002) (holding that the court need not

undergo a choice of law analysis where "the party advocating a choice of law analysis fails to

demonstrate an actual conflict between New York and another state's laws")).)

However, it is not clear whether U.K. law or Luxembourg law have a safe harbor

analogous to the section 546(e) safe harbor, or, if not, whether the absence of such a safe harbor

would constitute an actual conflict between New York law and the applicable foreign law.  *See*

*Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 331 (2d Cir. 2005)

(holding that, under New York choice of law rules, an actual conflict exists where each

jurisdiction's applicable law provides different substantive rules, which are relevant to the issue

to be decided, and have a "significant *possible* effect on the outcome of the trial" (emphasis in

original) (citations and internal quotation marks omitted)).  As potential choice of law issues may

require the application of a different jurisdiction's substantive law to the Plaintiffs' unjust

enrichment claim, it is premature to conclude that the unjust enrichment claim is barred by

section 546(e).

### III.    CONCLUSION

Based on the foregoing, the Reargument Motion is **GRANTED** for the limited purpose of

addressing the Movants' Motion to Dismiss argument that section 546(e) bars the Plaintiffs'

unjust enrichment claim.  However, the Court concludes that the unjust enrichment claim is not

precluded by section 546(e) at this stage of the pleadings.  The Court therefore adheres to its

holding in the Prior Opinion and **DENIES** the Motion to Dismiss the unjust enrichment claim

against the Movants.

**IT IS SO ORDERED.**

Dated:  March 9, 2015
         New York, New York

                                                    *Martin Glenn*
                                        MARTIN GLENN
                                United States Bankruptcy Judge